There are two issues I'd like to address. One is the global issue of the admissibility of the two laptop computers pursuant to Evidence Code Section 404B. But what I'll address first is the preliminary issue concerning the Fourth Amendment argument regarding the search of those two laptop computers. I want to address that and spend most of my time on that issue first because it would moot consideration of the global issue if the Court decided to do so. And also because I think that that search issue involves an emerging area of Fourth Amendment law. And that area is the necessity for law enforcement to obtain a search warrant in order to view data stored in a computer which has been lawfully seized, either pursuant to a warrant or to consent, but for which there has been no specific authorization allowing an officer to view the contents of that computer. Well, isn't it enough that he's standing by, watching the officers as they look into the computers? Well, I think the Court has to distinguish. Is that consent? I mean, isn't that a waiver of any claim? The Government's argument is certainly that at the time that Detective Townsend opens one computer and turns it on and sees information, the Government's argument is that Mr. Rossby's observation of that conduct without complaint implies his consent to Detective Townsend's subsequent search of the interior files of both computers. Well, isn't that a reasonable inference? I don't think so. Why? First, because Detective Townsend, with respect to Detective Townsend's conduct in the office that day, I believe the record indicates that all he did was turn on the computer and observe the initial information which appeared on the face of the screen, not conduct a search of individual files. But if he does that, isn't it pretty apparent that when he closes and he's going to take it away, the reason he's doing that, because he wants to look into the files. I mean, that's the only inference you can draw. I mean, suppose, you know, you had a computer on the table, you know, I turn it on to see what's there. I close it up and I take it out. What am I going to do with it besides search it? I might want to sell it. But I mean, the inference is you're going to search it. Right. I mean, and he knows that's going to happen. And he doesn't object. He doesn't object in light of this consent, the broad consent to search that he gave. First, I don't think that's the only inference which could be drawn from the officer's conduct. The officer himself testified that one of his interests was in obtaining serial numbers, tracing serial numbers, observing the exterior of the computer and attempting to trace the ownership of the computer, not from its interior files, but from its exterior appearance. So I think that Mr. Rossby might well have drawn the inference that the officer wished to seize the computer for purposes of exterior observation rather than interior search. Next, I think when the court has to look at the scope and nature of the implied consent, you must remember that Detective Townsend was an experienced officer assigned to express implied. But they merge in my argument. Now, let me explain why. Detective Townsend is an officer with a high tech task force. He is extremely experienced in the seizure of computer information, the retrieval of data, and the necessity for obtaining search warrants to view that data. He drew up the written consent form, which obtained the express consent, the express written consent. The express written consent contained no reference to the search of data contained within any computers. It's correct that at the time that was drafted, Detective Townsend had not yet seized any computers. But as the experienced officer he was, he certainly had the opportunity to refine the express consent that he had already obtained from Mr. Rossby and which we know he needed to obtain. And there is nothing in the record that indicates that Detective Townsend did anything to communicate to Mr. Rossby his intent to search the contents of the computer. I think the Court's right to focus on the brief interaction in which Detective Townsend placed the computer on the table, opened it, and viewed the opening screen. I think I wanted to continue that argument to draw the Court's attention to the case I cited in my 28J letter, which of course I know Your Honor participated in the decision of, U.S. v. Wong, and the Tenth Circuit decision cited therein, U.S. v. Carey, because I think those cases combine to demonstrate the principle that a search warrant is required when a law enforcement officer wishes to search the interior of the computer which they have seized pursuant to lawful consent or warrant. And what about our Reeves case? I'm sorry, could the Court reform? Our Reeves case, when you search the briefcase. In other words, to search the briefcase includes the searching of its contents. There is a long line of jurisprudence dealing with containers within containers within containers, and when I refer to there being an emerging area of law, I refer to the distinction which is being drawn between the retrieval of digital information and the opening of containers, and of course the classic line of cases is in vehicles, enclosed containers within vehicles. In this case, the government relied principally on Florida v. Gimeno, which is a closed container within a vehicle case. The Wong case decided by this Court, the Carey case, and a number of other cases, draw a clear distinction between containers within vehicles or safes within houses or any interior with interior kind of case, such as the briefcase scenario you're describing, and the case where there are more discrete privacy issues created by a user of a computer who has done the equivalent of enclosing information within a series of briefcases, if you will, those briefcases being layered files within a computer. So there are really two separate issues. One is if the Court thinks that Mr. Rossby gave implied consent, then Wong doesn't apply. Then you don't have to reach that analysis. But if there was no implied consent to view the interior of the computers, then the Court's got to say that a warrant was required and that his consent to have the computers seized or items seized from his office. Is there anything in his conduct that suggested that he only permitted access to the front screen as opposed to any of the interior contents of the computer? No. The officer's testimony was silent as to any conversation between himself and Mr. Rossby at the time that he initially viewed the screen, at least with respect to Mr. Rossby's consent or lack of consent that he go further. It is perhaps significant that Mr. Rossby delivered one of the computers to the law enforcement himself. The officer allowed him to keep one of the computers, took one away with him and later called Mr. Rossby and Mr. Rossby delivered it to the station. Do you want to say anything about the 404-B? Certainly. I think that assuming that the information was validly obtained, I think this case goes to the heart of the policy purpose behind 404-B. I'm almost persuaded that there was a 404-B violation here, but I guess I'm stuck on the question of whether it was harmless. Well, I think then the Court's got to look at the entirety of the trial record because this is a case in which the principal issue was the defendant's state of mind and the trial defense, although Mr. Rossby didn't testify concerning his own knowledge or absence of knowledge, the entire weight of my argument at that trial had to do with knowledge. With respect to the 404-B issue generally, it's important to remember that Judge Ingram admitted the evidence for intent, plan or modus operandi, and I think that was clearly error. There was no evidence that there was any plan or intent to sell the 404-B computers. Does intent include knowledge? No, I think knowledge is a distinct element within 404-B. If it were intent, it would have to be that he possessed the 404-B computers with the intent to sell them in a similar scheme or plan to the one for which he was convicted. I think those are distinct elements, and the sole purpose for which the evidence was admitted and for which there was a cautionary instruction to the jury was that they could be considered for modus operandi, intent or plan. And I think the government, in its brief, essentially concedes that that was an improper purpose for which it was admitted. The government argues that there is another purpose for which it might have been admitted but which was not admitted, and that is knowledge. But to return to the harmless error issue, in any case in which state of mind is the principal issue at trial and 404-B evidence is admitted on the issue of knowledge, and the standard, of course, is that there is a reasonable possibility that a different verdict would have occurred, I think reversal must be required because how can one then separate the jury's verdict if the jury was only really asked to decide knowledge if that was the element was an issue and impermissibly admitted 404-B evidence came in on the issue of knowledge, then there's a reasonable possibility that there would have been a different verdict. We can't separate the jury's consideration in that way. Okay. All right. Any further questions? Thank you. Thank you, counsel. May it please the Court. My name is Chris Tesco. I represent the United States. I would like to begin where the defendant began, which is with the Fourth Amendment issue, because I think that's an issue where the record hasn't been fully presented to the Court. The issue is there's no dispute that the defendant gave express consent to the search of his office. The only issue is the scope of that express consent. This Court has held that an objective test applies to determining that issue, and the question is what would the typical reasonable person have understood by the exchange between the officer and the suspect? And the Supreme Court has held that the scope of a search is generally defined by its expressed object. And here the expressed object of the search was to allow Detective Townsend to review computer data on the defendant's computer at his office. At the time the consent was given, the defendant was arrested for possessing stolen computer equipment. He had a computer within his office which had data relating to his sale of some of that equipment on eBay, and he asked Detective Townsend to come to his office to review that data. And I'd like to refer the Court to a portion of the record. It's Defense Counsel's cross-examination of Detective Townsend, and I quote from November 26 at page 24. And the question was, after the defendant spoke to you about seeing a view station on eBay, what he was going to do at the office was to show you the digitized information on his computer documenting the eBay sale. Answer, yes. That's how the idea that you would all go to his office came up. Answer, yes. So what's clear from the record was that the whole purpose of going to the defendant's office on January 4th was to look at computer data on his computer. And it was within that context that they executed the consent form. Then when they were at the defendant's place of business, Detective Townsend and the defendant looked at the data together. In fact, Detective Townsend testified that the defendant accessed the Start menu on the compact computer so that he could look at that data. And here I'd like to cite the Court trial testimony from or testimony of Detective Townsend from November 13th at page 89. And, again, this is Defense Counsel's cross-examination of Detective Townsend. It's actually at page 116, excerpt of record page 89. You don't have personal knowledge that Mr. Rosby viewed the contents of the Start menu of this computer, do you? He's referring to the compact. Answer, yes, I do. Question, describe how you know that if you do. Answer, he did it for me while I was at his business. So the record's clear that Mr. Rosby, the defendant, accessed the computer files for Detective Townsend. The record's also clear that the other computer files in both computers were viewed simultaneously by both Detective Townsend and Mr. Rosby. And that can be found on November 26th at the transcript at page 26. Once again, during the cross-examination of Detective Townsend, there is a colloquy where Detective Townsend says, yes, we looked at the computer information together while at his office. Finally, in closing argument, Defense Counsel argued that the defendant didn't know the computers were stolen because he invited the police to come to his office to look at the computers for that express purpose. And here I'm going to read from the defendant's closing argument on November 27th at page 69 of the trial transcript. And this is Defense Counsel. How do we know that Mr. Rosby had no idea that these were stolen? Talking about the computers. We know it from Mr. Rosby's conduct. That's the clearest evidence. Mr. Rosby is standing in his living room and he's talking to the police, and obviously he's a suspect at that point, and he knows that they want to investigate him further, and he raises the idea of going to his office. Remember I asked Detective Townsend very specifically about this. They were talking about going to get the documentation of the e-mails to Mr. Naylor, and Mr. Rosby invited the agents to his office before they asked for consent, before they asked for consent to search. So he knows the computers are at his office, and he's telling them, let's go there. That's Defense Counsel's argument in closing. So on that record, it was plainly not clear error for the district court to find that the defendant consented to have Detective Townsend look at the computer files. Do you want to say anything about the Wong case? The Wong case is a search warrant case, and it's an application of the plain view doctrine within the context of executing a search warrant on a computer. The search warrant said you could look for visual images relating to this murder investigation. What the officer found during his execution of the search warrant was child pornography, and Wong, this court, held that there was nothing wrong with that because it was in plain view. I think if that case has any application here, what it means is that once they were looking at the computers, at Mr. Roski's suggestion and consent, and Detective Townsend saw it indicia that the computers were stolen, and again the evidence trial was that it was impossible to operate these computers without seeing that indicia. That indicia was in plain view. He had probable cause to believe the computers were stolen, and that would justify their seizure, and he could take them at that point. If he needed that justification, of course, he had a consent that said he could take whatever he wanted. So to the extent Wong has any application. What about your specific response to Mr. Rohde's argument that there is an evolving legal distinction here with respect to the whole container doctrine? When it comes to computers, the same tradition does not apply. I think there is evolving case law in the search of computers, and the courts have applied traditional Fourth Amendment principles, the principle that usually applies with closed containers is what was the purpose of the search. And, for example, if the purpose of the search is for drugs and the consent was to search for drugs, then that gives the officers permission to look for drugs in any container where that might exist. The courts have applied a similar analysis in the computer context. The only case, the case at the defendant's sites, as an indication where a search was held invalid of a computer, United States v. Cary, a Tenth Circuit case, there the search warrant was for drug-related evidence, and what the facts showed was that once the officer opened up a JPEG file and saw child pornography, he opened up the rest of the JPEG files looking for child pornography. So in that case, the consent was limited to a search for drug-related evidence, and the officer exceeded the scope of that consent. And that's why I think it's important to look at the record here and realize that the defendant's consent to search was specifically directed at the contents of the computers. I'd like to turn now to the 404B evidence. This Court has held that other acts of evidence is admissible under Rule 404B where a four-part test is met. First, there must be sufficient evidence for the jury to find that the defendant committed the other acts. Second, the other acts are introduced to prove a material issue in the case. Third, the other acts are not too remote in time. And fourth, if admitted to approved intent, the other acts are similar to the offense charged. I'd like to begin with the first component of that test because that's where the parties focus their attention before the district court. That is whether or not there was sufficient evidence for a reasonable jury to find that the defendant knew the laptop computers were stolen. The district court held an evidentiary hearing on that issue outside the presence of the jury and found that there was sufficient evidence. The evidence was clear that the laptop computers were stolen. The whole purpose of the hearing was to determine whether or not Mr. Rossby knew they were stolen to a sufficient degree to allow a jury to make that finding. And during that hearing, the district court heard a testimony from Detective Townsend and also reviewed both the Compaq computer and the IBM computer, and there was strong indicia relating to each computer that would place the defendant on notice that both computers were stolen. For example, with respect to the Compaq computer, when the computer was turned on, a logon menu popped up with the name Karina on it and asking for a password. There was no way to access that computer without seeing that logon menu and pushing OK or pressing OK to make that logon menu disappear. Second, with the Compaq computer, while it's being operated at various points, a dialog box would pop up automatically asking the user to connect to Taos HQ. Taos is the name of a company. HQ is its headquarters. And it was impossible, again, to use that computer without having that automatic pop-up screen appear. Yeah, but isn't the problem here the relevance of this evidence to the view stations? In other words, if the inference of intent being transferred to the view stations, isn't that the issue? Isn't that the problem? Well, I think the defendant attacked all two or three of the prongs of the four-prong test. I will now address what is the second prong, and I think that goes to Your Honor's question, which was what was the purpose for admitting it. Was it admitted for a proper purpose? And in your response, I'm interested in knowing that if there is a 404B violation here, or 403, rather, can we look at the issue of harmless error? Yes, Your Honor. What I propose to do is to address the second prong, which is the purpose for which it was admitted, and the fourth prong is somewhat related, which is the issue of similarity of the prior act and the charge act, and then I'll address harmless error. Okay. The government proffered the evidence relating to the laptop computers as going to the defendant's knowledge and the absence of mistake. Defense counsels write that the district court, in its oral ruling, admitted the evidence as going to intent. But I think Judge Tshima's question is well taken, which is in this case the issue of knowledge and intent are closely related. And, in fact, at page 14 of his brief, the defendant says that the issue of defendant's knowledge that the view stations were stolen was a, quote, necessary preliminary fact to a finding that the defendant committed the intent element of the mail and wire fraud counts. And that's true because the defendant's knowledge that the view stations were stolen goes to all ten counts, and by that I mean that the defendant was charged with misrepresenting the origin of the view stations and committing fraud in doing so. So a necessary fact of proving that element was that the government had to prove that the defendant knew the view stations were stolen. If it couldn't prove that, then the government couldn't prove materiality as well as willful intent to defraud. So the district court did use the language of intent, but in this case intent and knowledge are somewhat closely related. But I do think the right category to fit the evidence in is the issue of knowledge. And I think based on the record, that's what the district court was thinking when it said that it was admitting it to intent. And the evidence regarding the laptop computers made it more likely that the defendant knew the Polycom view stations were stolen and less likely that he was duped into possessing the Polycom view stations. That's true because the laptop computer evidence shows that the defendant was experienced with stolen computer equipment. He was not an innocent who could be duped. And he willfully turned a blind eye to the indicia that the computer equipment was stolen, and that's exactly what he did with respect to the view stations. He willfully turned a blind eye that the view stations were stolen and claimed to be an innocent. And the fact that he had done that with the laptop computers makes it less likely that he was duped and more likely that he was acting knowingly when he turned that blind eye to the indicia that the view stations were stolen. So that's the theory of relevance. The Supreme Court, at least in principle, accepted a similar theory of relevance in the Huddleston case. There the issue was whether or not the defendant knew that Miramax audio tapes that he was trying to sell were stolen. The government offered evidence that on two prior occasions the defendant had tried to sell 12-inch TV sets and tried to sell kitchen appliances. And in those two prior occasions there were suspicious circumstances surrounding the defendant's activities with respect to those items. And the Supreme Court, at least in principle, accepted that proof of prior suspicious sales was, quote, strong evidence that the defendant knew that the items at issue were stolen. The same argument applies here. The evidence of the defendant's prior suspicious possession of the laptop computers, that the laptop computers provided this indicia that they were stolen and the defendant willfully turned a blind eye and claimed to be duped with respect to laptop computers, is strong evidence that the defendant knew that the view stations were stolen. With respect to the issue of... Stations used in connection with laptop computers or vice versa, have a... No, they're both computer equipment, but the view stations are teleconferencing equipment, high-end teleconferencing equipment, and the laptop computers are... Just laptop computers. Laptop computers. So it's... I mean, the equipment's different, but the defendant's... And the important issue here is the defendant's conduct with respect to each. With respect to each, he was on notice that the items were stolen. He turned a blind eye to that indicia that they were stolen. With respect to each, he claimed to be duped. He claimed to be an innocent. And with respect to the compact computer, he gave inconsistent stories as to why he possessed it. That's exactly what he did with respect to the view stations. Is it significant that the computers, at least the laptops, were stolen in entirely different circumstances from the view stations? No. What's significant is the defendant's prior act isn't stealing, and he was never charged with stealing anything. What's significant is the defendant's reaction to that equipment once in his possession. The defendant's prior act was how he reacted to the computer equipment in his possession. What's significant is the defendant's willfully turning a blind eye and then coming up with a story as to why he was duped. Do you recall, Mr. Steskov, what the wording of the limiting instruction of the district court was on the use of this 404B? I do recall it, Your Honor. I know the district court gave limiting instructions at two points. First, during the presentation of the evidence, the district court did give a limiting instruction. You'll find that on November 26th at page 12 of the trial transcript. I don't have the exact language in front of me, but he essentially told the jurors that this evidence was being introduced for a very limited purpose. Well, what I'm interested in is, I mean, he didn't say knowledge, did he? He talked about intent and plan or something like that? My recollection is he did not say knowledge. What he did say was it's being introduced for a limited purpose to show things like intent, plan, modus operandi and things of that nature. He did not say knowledge. But, again, I think the issue of intent and knowledge in this case is closely related. The knowledge piece of it was a predicate fact for the government to prove intent. And then at the close of evidence and while instructing the jury, the district court did give the instruction that the defendant is only on trial for the charged crimes and not for anything else. So with respect to the 403 analysis, Your Honor, first I think there's very little prejudicial effect, if any, from this evidence. It's not the type of evidence that will create a strong prejudice in a jury. He wasn't charged with stealing the computers. He was just charged with possessing them. And to the extent that it shows anything, it shows that he knows what stolen computer equipment is, which is exactly what the jury was allowed to consider the evidence for. That, coupled with the limiting instructions, I think, takes care of the 403 evidence. I do want to address the harmless error issue. And I think Your Honor is right that to the extent there is a problem with the 404B evidence, the evidence at trial was so strong that any of his knowledge that the V stations were stolen, that any error was, in fact, harmless. And I'd like to just walk the court through some of that evidence. But before you do that, now, what's the standard? Is it more probably than not? Yes, Your Honor. It's more probably than not admission of the evidence to not affect the jury's verdict. Go ahead. Thank you. The defendant bought the V stations before buying the V stations. The defendant approached his landlord and asked him to borrow some money because he said he wanted to purchase eight to ten Polybutyne stations, which he said retailed for about $18,000 each. The landlord asked questions. The defendant said he didn't really know who the seller was. He wasn't a business. He didn't have a warehouse. He wasn't sure of the first name of the seller and didn't know the last name of the seller. The defendant's landlord told the defendant, that sounds fishy and I wouldn't touch it with a 50-foot pole. So from the get-go the defendant was on notice that there was something, quote-unquote, fishy about the transaction. It only gets worse from there. The defendant went to purchase the V stations in a dark alley on Cap Street, which is near a residential street in the Mission District, at 9 p.m. at night. He paid cash. He didn't receive a receipt. And he paid less than $1,000 for each V station. And the V stations were new. Then the defendant advertised one of the V stations on eBay. He claimed it was brand new and worth $15,990. And when the seller asked about it, he told the seller that he had purchased it in Europe at an auction. So immediately the defendant started lying about the origins of the V station. He was then contacted by another person who had seen the eBay advertisement. And he told that person that, again, he had purchased the V stations in Europe at auction. That person became suspicious and asked for serial numbers. The defendant gave the prospective buyer incomplete or false serial numbers. Again, indication the defendant knew they were stolen. The police began investigating. The defendant returned three V stations. When the police asked him about the fourth on eBay that he sold on eBay, the defendant said, oh, yeah, I bought four. Then the police asked for permission to search his car. The defendant reluctantly agreed. The police found a fifth, arrested him. Then when they were driving him to the police station, the defendant said, oh, pull over here in these bushes, you'll find four more. So the defendant was lying about the number of V stations he purchased immediately upon his contact with the police. You need to draw to a close. Pardon me? You need to draw to a close. Yeah, and this will be as good a place as any to close, Your Honor. I think the evidence regarding the defendant's knowledge that V stations were stolen is both circumstantial, the indicia, but there's also plenty of direct evidence that the defendant knew they were stolen based upon his lies to the buyers and the police. Thank you, Your Honor. Thank you. I may address a couple of counsel's comments. First, with respect to the sufficiency of evidence that the defendant knew that the 404B evidence was stolen. The inference depends on the testimony of Detective Townsend that a person who purchased a computer and found another user's information on that computer should infer that the computer was stolen. I don't believe that's a reasonable inference and, therefore, base my argument that the evidence that there was insufficient evidence of knowledge as to the laptop computer. What are the other, what's another, what is the most reasonable inference? That the computer was in a chain of sales and that someone selling it to another did not wipe the hard drive, which is a practice of some sellers. But there's no evidence in the record on this, but I think the court can infer that a seller. Well, part of it depends on, say, how much that person paid for the computer, right? In other words, if it's in a chain of sales and, you know, you buy it for $25, you might. Whether you buy it. You might become suspicious as opposed to if you paid $300 for it. And whether you buy from a private person or a retailer. But those other those other facts are not in this record. The facts which are in the record of the Mr. Rossby told Detective Townsend that he had purchased one at a flea market and one at a secondhand retail computer sales. Let me speak to the 404 argument. The other elements of 404. Another requirement is that it be similar to the offense charge. The evidence related to the 404B evidence related to Mr. Rossby's knowledge that he possessed stolen computers, not that he intended to sell them or engage in a mail or wire fraud, which was the charges for which he was convicted. So there is a disconnect there between the 404B evidence and the offenses of conviction and a failure to meet all the elements of 404B. There's a scheme on the one hand and there's simple possession on the other hand. Proof of simple possession does not go to prove a scheme. And with respect to the harmless error argument, I would repeat and reframe my answer to your Honor's question. Where 404B evidence goes to the only contested element at trial, it is particularly prejudicial. That is, if there has been an error in admitting 404B evidence and the evidence goes to knowledge, which was the only contested issue at trial, that must affect this Court's harmless error analysis. Are there any other questions I can address? Thank you. Thank you, Counsel. The case just argued is submitted for decision.
judges: Schroeder, O'scannlain, Tashima